UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

SPANSKI ENTERPRISES, INC., :

    Plaintiff, : 12-CV-2897 (ALC) (GWG)

    -against- : **DECLARATION OF BOGUSŁAW M. SPAŃSKI IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

TELEWIZJA POLSKA S.A., :

    Defendants. :

------------------------------------------------------------X

    I, BOGUSŁAW M. SPAŃSKI, declare under penalties of perjury under the laws of the United States of America that the following is true and correct:

    1.    I am the owner of Spanski Enterprises Inc. ("SEI"),[1] the plaintiff in this action. I have personal knowledge of the matters set forth herein, and respectfully submit this declaration: (a) in support of SEI's cross-motion for summary judgment as to its claim seeking a declaration that Defendant Telewizja Polska S.A. ("TVP") is contractually prohibited from distributing or transmitting (directly or indirectly) the television channel *TVP Info* in North or South America (the "Territory"); and (b) in opposition to TVP's motion for summary judgment.

The Parties and Their Agreements

    2.    Plaintiff SEI is a Canadian corporation with its principal place of business in Mississauga, Ontario. SEI and its subsidiaries are engaged in, among other things, the distribution of Polish-language television and radio content in North and South America via satellite and cable television, and via the Internet.

---

[1] I own 89% of SEI and my wife Maria owns the other 11%.

3. Defendant TVP is a state-owned Polish corporation. TVP owns and operates several Polish-language television channels including *TVP Polonia* (formerly known as *TV Polonia*) and *TVP Info* (formerly known as *TVP 3 Regionalna*).

4. By written agreement dated December 14, 1994 (the "Agreement"), SEI acquired from TVP the exclusive right to distribute *TVP Polonia* (a Polish-language television channel produced by TVP), including its copyrighted programming, in the Territory for an initial term of twenty five years (*i.e.*, until at least 2019). A true and correct copy of the Agreement (in Polish) is annexed hereto as **Exhibit 1**. A certified English translation of the Agreement is annexed hereto as **Exhibit 2**.

5. In exchange for TVP's grant to SEI of the exclusive right to broadcast *TVP Polonia* in the Territory, SEI agreed, among other things, to bear the costs associated with the transport and re-broadcast of the signal, and to pay TVP a royalty equal to eight percent (8%) of the revenues SEI received each calendar quarter derived from its exploitation of *TVP Polonia*, specifically from the revenues received by SEI from subscription fees and advertisements. See **Exhibit 2** (Agreement) at §§ 4(3), 6(1). Following the execution of the Agreement, SEI expended more that $3 million establishing the necessary infrastructure to facilitate the distribution of *TVP Polonia* throughout the Territory.

6. By contractual addendum dated as of November 4, 1999 (the "First Addendum," true and correct copies of which are annexed hereto as **Exhibits 3** (Polish) and **4** (certified English translation)), TVP expressly granted SEI the exclusive right to distribute *TVP Polonia* programming via the Internet within the Territory. See **Exhibit 4** (First Addendum) at § 1(2)-(3) ("TVP grants SEI the exclusive right to use TV Polonia Shows in its programming on the

Internet."; "In order to implement Sections 2 and 3, TVP gives SEI [the] exclusive right to receive and use the signal on the Territory").

7. Thereafter, by instrument dated April 29, 2002, SEI and TVP entered into a second addendum to the Agreement (the "Second Addendum," true and correct copies of which are annexed hereto as **Exhibits 5** (Polish) and **6** (certified English translation)).

8. The most significant provision of the Second Addendum included the grant from TVP to SEI of the exclusive rights in and to the distribution in the Territory of a second channel, *TVP 3 Regionalna* (now known as *TVP Info*) for a ten-year period. SEI's distribution rights to *TVP Info* recently expired on April 29, 2012 and were not renewed. The Second Addendum also expressly provided that the Agreement (as amended) would be governed by New York law and that any disputes between TVP and SEI relating to the Agreement (as amended) would be submitted to and resolved by a Federal Court in the City of New York. **Exhibit 6** at § 8.

TVP's Efforts to "Break" the Parties' Agreement

9. In order to understand the "Settlement Agreement" (discussed below) that is the subject of this action, it is necessary to understand the history between SEI and TVP that led to this agreement. In TVP's motion papers, TVP states without explanation that "[t]he relationship between TVP and SEI has been acrimonious for a long time." See TVP's moving brief at 6. As set forth below, any such acrimony has been a result of TVP's repeated efforts to "break" its contractual commitments to SEI (which TVP documented in writing; such documents being discovered in the parties' prior litigation), as well as TVP's efforts to overcome SEI's exclusive distribution rights (by its wrongful license of the most popular *TVP Polonia* programming for distribution by one of SEI's competitors in the largest Polish-language market in the United

States (claims now subject to a separate action currently pending before this Court) and its current wrongful claim of right to distribute *TVP Info* in the Territory).

10.     As SEI's efforts over the years to promote and expand the market for *TVP Polonia* and *TVP Info* met with increased success and profitability, TVP's representatives began to express their view to me that the Agreement was "too favorable" to SEI. The market for Polish television in the Territory having now been established by SEI and its affiliates, and SEI having already made the initial investment to develop the market in the Americas (at no financial or other risk to TVP), TVP apparently believed that it no longer needed SEI in the equation.

11.     At the beginning of 2005, I was informed by TVP that it had undergone a structural change, and that my primary contact for continued business purposes would change to Krzysztof Sztandera, a manager of the newly created office of signal "re-emission" in TVP's Trade and International Cooperation Office.

12.     Unbeknownst to me at the time, but revealed in the documents that were produced by TVP in a prior litigation between the parties (discussed further below), within the first few months of his employ by TVP, Mr. Sztandera undertook a "review" of the Agreement (as amended) entered into between TVP and SEI and sought a way to terminate it by construing it incorrectly and contrary to the parties intent and contractual performance for over ten years, in a clear attempt to eliminate SEI from the business it had built in the Territory.

13.     On March 3, 2005, Mr. Sztandera wrote a memorandum to TVP's Director, Piotr Fajks, summarizing TVP's agreements with SEI and concluding that "[t]he Agreement should be terminated, but the matter is not simple." A copy of Mr. Sztandera's March 3, 2005 memorandum is annexed hereto as **Exhibits 7** (Polish) and **8** (certified English translation).

14. TVP's bad faith efforts to deprive SEI of the benefits of the Agreement intensified in 2006 when, due to political changes in Poland, virtually the entire senior management of TVP was replaced. These new executives had little to no knowledge of, or respect for the parties' intent and negotiations in entering into the Agreement or its Addenda, or the manner in which SEI and TVP had performed their respective obligations for the preceding twelve years. Rather, the documents produced in connection with the action revealed that TVP's new management sought to "break" our Agreement by any means possible. See, e.g., **Exhibits 9** (Polish) and **10** (certified English translation of the February 24, 2006 note from Michał Romanowski to TVP's Piotr Gaweł and Piotr Fajks stating that "On the instructions of TVP, I prepared two legal opinions concerning two fundamental questions: the possibility of revoking the agreement with S.E.I., and the possibility of 'reinstating' the competence of Polish law and the jurisdiction of Polish courts. While working out both opinions, I was guided by the following assumption: to strive not to duplicate work already performed by Baker & McKenzie, but rather to discover new ways TVP may exit the Agreement with S.E.I.").

15. Notwithstanding that TVP had no basis to terminate the Agreement, by the beginning of 2006, TVP had begun negotiations with EchoStar and DirecTV for the exclusive satellite distribution in the United States of, among other channels, *TVP Polonia* and *TVP Info*. For example, a January 12, 2006 memorandum (a copy of which is annexed hereto as **Exhibits 11** (Polish) and **12** (certified English translation)) concerning the distribution of "TVP thematic channels on the USA market" – a document which TVP designated a "trade secret" under Polish law – evidences that TVP had sent primary deal terms to EchoStar and DirecTV for the proposed "exclusive" distribution of *TV Polonia*, *TVP 3* (n/k/a *TVP Info*), as well as certain other "thematic channels."

16.  The desire of TVP's new management to cancel the Agreement between TVP and SEI were wholly unknown to me until June 2006, when I traveled to Warsaw to meet these new TVP executives in an effort to strengthen SEI's relationship with TVP and to seek out new opportunities for broadening the scope of TVP programming content being distributed by SEI and its affiliates.

17.  On June 29, 2006, I met with Anna Milewska, a new member of TVP's Management Board, and other TVP executives. Ms. Milewska told me that TVP was interested in continuing its relationship with SEI provided SEI was prepared to make substantial concessions which she did not describe at our meeting.

18.  Later the same day, I met with Krzysztof Sztandera. Mr. Sztandera advised me in no uncertain terms that he had devised a "way around" SEI's exclusive rights. Mr. Sztandera proceeded to tell me that unless SEI was prepared to substantially limit its exclusive rights, TVP would create new "thematic" channels containing programming content previously exclusive to *TVP Polonia* and *TVP Info* which he claimed TVP would then be free to license in SEI's exclusive territory.

19.  The next day, on June 30, 2006, Mr. Sztandera wrote a letter to Ms. Milewska forwarding SEI's contract with TVP (as well as its amendments), and providing her with a summary of "[t]he current state of affairs." A copy of Mr. Sztandera's June 30, 2006 letter is annexed hereto as **Exhibits 13** (Polish) and **14** (certified English translation). As set forth therein, TVP's efforts to terminate or modify its relationship with SEI was apparently motivated (at least in part) by a desire for greater financial gain:

> Numerous conversations held between representatives of TVP S.A. and Mr. Spanski (most recently, yesterday) have made it clear to the contracting parties of the need to achieve a compromise between the scope

> of rights granted S.E.I. and the resulting financial expectations of TVP S.A.

**Exhibit 14** at TP 7007852.

20. Later that same day (on June 30, 2006), Mr. Sztandera e-mailed Tracy Thompson West of EchoStar and informed her of recent developments. A copy of Mr. Sztandera's June 30, 2006 e-mail is annexed hereto as **Exhibit 15**. Therein, Mr. Sztandera documented that it was his intent, and the intent of Ms. Milewska (and, thus, TVP) to "break" the binding Agreement between TVP and SEI:

> I think we are much closer to the finish because the new Vice President [Milewska] responsible for our deal just received … info about [the] situation[.] [S]he/because it is a Lady/ also meet [*sic*: met] Spansky [*sic*] and according to my knowledge **she wants to break the contract with him**. From another side we yesterday received an info from Baker&McKenzie about sobpoena [*sic*: subpoena] so we will analyze that. [In parallel, Baker & McKenzie has] prepared a court case in Warsaw to cancel the contract. **I also work very hard to break this**. […]

**Exhibit 15** at ESLLC000901 (emphasis added).

21. In late July 2006, Ms. Milewska sent me a proposed "new" agreement for the re-broadcast of *TVP Polonia* by SEI, reflecting TVP's newfound view of its further cooperation with SEI. A true and correct copy of TVP's proposed "new agreement" is annexed hereto as **Exhibits 16** (Polish) and **17** (certified English translation). By this new agreement, TVP required SEI to surrender its 25-year exclusive rights in *TVP Polonia*, surrender its 10-year exclusive rights in *TVP Info*, in exchange for which SEI would receive a one-year, non-exclusive license to re-broadcast *TVP Polonia* which would obligated SEI to pay TVP a higher share of revenues. SEI immediately rejected TVP's proposal.

22. In light of SEI's refusal to renegotiate the Agreement, TVP began to act on the suggestion of its counsel who had wrongly suggested to TVP that SEI might be willing to

renegotiate the Agreement if TVP threatened to repackage the *TV Polonia* programming and distribute this "new" channel under a similar name via SEI's competitors in the Territory. See, e.g., **Exhibits 18** (Polish) and **19** (certified English translation of February 24, 2006 "Note" from TVP's counsel which suggested: "Alternative solutions: 1. One option for TVP is to create a different program under the name TV Polonia with some additional content, e.g. TV Polonia Premium, TV Polonia 2 etc, which can then be 'sold' on the American market. Advantages: ... (2) this may induce Spanski to look for a compromise against the possibility that his offerings will most likely lose a great deal of their value.").

23. Accordingly, in December 2006, TVP's Mr. Sztandera and Ms. Swiatkowska began negotiations with EchoStar's Tracy Thompson West and Izabela Slowikowska for the distribution of just such a repackaged version of *TV Polonia* – a channel they called *TVP for Polonia*. On December 8, 2006, Mr. Sztandera forwarded to EchoStar by email (a true and correct copy of which is annexed hereto as **Exhibit 20**) a description of the "new" channel *TVP for Polonia* which was identical to the description of *TV Polonia*.

In an Effort to "Break" the Parties' Agreement, TVP Wrongfully Initiates an Arbitration Proceeding Against SEI in Poland; The Prior Action and the Settlement Thereof

24. On October 26, 2006 (*i.e.*, in or about the same time that TVP was negotiating with EchoStar for the distribution rights to *TVP for Polonia*), TVP wrongfully initiated an arbitration proceeding against SEI (and one of its affiliates) in Warsaw, Poland (the "Warsaw Arbitration") which sought to have the First Addendum and Second Addendum set aside, and further sought to drastically limit SEI's exclusive rights under the Agreement pursuant to a wholly newfound "construction" of the Agreement devised by TVP's attorneys. A true and correct copy of TVP's arbitration Statement of Claim (without exhibits) is annexed hereto as **Exhibits 21** (Polish) and **22** (English translation provided by TVP) (alleging therein that "[t]he

Agreement is grossly disadvantageous for TVP"). TVP did not serve SEI with the arbitration demand until January 2007.

25. Because the parties had contractually agreed to litigate their disputes before this Court (see **Exhibit 6** (Second Addendum) at § 8), SEI brought an action against TVP in this Court (the "Prior Action") seeking to enjoin the Warsaw Arbitration, for declaratory relief concerning its exclusive distribution rights and, as is relevant here, SEI's claim that "the Agreement prohibits TVP from granting licenses to other companies within the Territory to retransmit TV Polonia or TVP 3, including their copyrighted content." A true and correct copy of SEI's Complaint in the Prior Action is attached hereto as **Exhibit 23**.

26. This Court (Lynch, J.) enjoined the Warsaw arbitration, and TVP thereafter counterclaimed in the Prior Action, among other things, that SEI had purportedly materially breached the Agreement numerous different ways and specifically sought a declaration that "TVP is not prohibited from licensing third party satellite, cable and internet providers in the Territory to distribute any shows broadcasted on the TV Polonia Channel or the TVP 3 Channel in any other TVP channels." A true and correct copy of TVP's Second Amended Answer and Counterclaims in the Prior Action is attached hereto as **Exhibit 24**. In addition, TVP took the position in the Prior Action that SEI's exclusive license to *TVP Polonia* and *TVP Info* programming was limited to a "one-time use." Thus, TVP asserted (wrongly) that it retained the right to distribute *TVP Polonia* and *TVP Info* (and the individual programs contained therein) after SEI's exclusive "one-time use" had passed.

27. On or about January 15, 2007, TVP began to openly infringe upon SEI's exclusive rights under the Agreement by distributing *TVP Polonia* and *TVP Info* programming via the Internet in North and South America in direct contravention of SEI's exclusive internet

rights in the Territory. Such distribution continued until September 10, 2007 when, pursuant to a stipulation agreed to in the Prior Action, TVP agreed to institute a geo-block which would preclude access to the TVP websites by users in the Territory. Attached hereto as **Exhibit 25** is a true and correct copy of the parties' September 11, 2007 stipulation (by the stipulation, TVP agreed to institute a geo-block as to its distribution of TVP programming content via the Internet in exchange for SEI's agreement to adjourn the trial, which was then-scheduled to commence in October 2007).

28. Thereafter, with trial re-scheduled to commence on March 3, 2008, SEI and TVP entered into a further stipulation in the Prior Action whereby, among other things, SEI agreed to further adjourn the commencement of trial in exchange for TVP's agreement that it "shall not distribute any thematic channel … or any other channel which contains any *TV Polonia* or *TVP3 Regionalna* (now known as *TVP Info*) past, present or future programming in North or South America and/or enter into any agreement for such distribution by way of license or other agreement with any third party , until thirty (30) days after entry of this Court's final judgment in this action." Attached hereto as **Exhibit 26** is a true and correct copy of the parties' Stipulation, so ordered by the Court on January 2, 2008.

29. Litigation of the Prior Action lasted for approximately two and a half years, costing SEI well over $2 million in legal fees and litigation-related expenses. SEI and TVP settled the Prior Action on August 11, 2009, just weeks before trial was scheduled, by a written settlement agreement (the "Settlement Agreement"), a true and correct copy of which is attached hereto as **Exhibit 27**.

30. I negotiated the Settlement Agreement on behalf of SEI with TVP, and executed the final Settlement Agreement on SEI's behalf. I negotiated the settlement directly with Piotr

Lenarczyk, TVP's then-director of its Programming Acquisitions, Sales and International Affairs Department.

31. The Settlement Agreement was intended by both parties as a complete settlement of all claims made in the litigation, with the sole exception of SEI's then-pending motion for sanctions against TVP for discovery abuse, which sanctions were later granted by the Court (Lynch, J.) and reduced to a judgment against TVP in the amount of $158,932.12.

32. The Settlement Agreement does not contain its own term or duration. Rather, the Settlement Agreement, which was intended to amend and clarify the parties' 1994 Agreement, is governed by the term set forth in the original Agreement (and, thus, the terms of the Settlement Agreement are binding until at least December 13, 2019). See **Exhibit 27** (Settlement Agreement) at II and II.N ("All other terms of the Agreement of 1994, as subsequently amended, shall remain in full force and effect ...."); see also **Exhibit 2** (Agreement) at § 10 (1994 Agreement providing that its initial term is 25 years).

33. Among other things, section II.A of the Settlement Agreement confirmed that "SEI is and shall remain the exclusive distributor of *TV Polonia* and *TVP Info* programming content in the territory of North and South America by any and all means of distribution [subject to minor exceptions not relevant here]." See **Exhibit 27** (Settlement Agreement) at II.A.

34. Section II.A, by its own language, precludes TVP from directly or indirectly distributing *TVP Polonia* and *TVP Info* (or the programming content of these channels) until at least 2019. The parties' purpose and intent in entering into this subsection was to (a) confirm that SEI and its subsidiaries were the exclusive distributors in North and South America of the programming that had appeared, was appearing, or would appear on *TVP Polonia* and *TVP Info*; and (b) to preclude and prohibit TVP from distributing *TVP Polonia* or *TVP Info* (or the

programming content of these channels) in the Territory, with "the sole exception" of distribution in movie theaters or festivals and/or via the sale of DVDs or tapes directly to consumers. Among other things, section II.A of the Settlement Agreement was intended to resolve (and prohibit) TVP's assertion in the Prior Action that TVP had purportedly retained any right to distribute any content during the term, including but not limited to other channels or *TVP Polonia* and *TVP Info* after SEI's exclusive "one-time use" had expired.

35. The Settlement Agreement further provided that: "TVP shall not distribute or offer to distribute, or permit the distribution of any other channels in North and South America that contain any of the same programming that is contained, has been contained, or will be contained in either *TV Polonia* or *TV Info*[.]" See **Exhibit 27**(Settlement Agreement) at II.E.

36. The purpose and intent of section II.E of the Settlement Agreement was to further confirm that SEI and its subsidiaries were the exclusive distributors in North and South America of the programming that had appeared, was appearing, or would appear on *TVP Polonia* and *TVP Info*. Further, the parties' intended and understood that the term of the prohibitions set forth in section II.E were to last at least until December 13, 2019 (the initial term set forth in the parties' underlying Agreement). This did not mean, and SEI does not claim that it meant, that SEI's own license to distribute *TVP Info* was extended past April 2012 until 2019. Rather, it meant and was intended to mean that in the event that this license was not extended and did expire in 2012, that TVP could not itself distribute *TVP Info* in SEI's exclusive Territory through 2019, and compete against SEI with a channel that SEI had worked for 10 years to promote in the marketplace.

37. Indeed, I specifically discussed with Mr. Lenarczyk of TVP, and the parties understood and intended, that the prohibition contained in section II.E of the Settlement Agreement would be remain in force until at least 2019 (pursuant to the original Agreement,

SEI's license for *TVP Polonia* programming would not expire until at least 2019 (and could be renewed)). It was the parties' intent, as confirmed by the accompanying declaration of Mr. Lenarczyk, that SEI's exclusivity as to *TVP Polonia* and *TVP Info* programming in the Territory would continue for the full duration of SEI's license of *TVP Polonia*, and that the prohibition precluding TVP from distributing any other channel containing the programming of either *TVP Polonia* or *TVP Info* would include any and all current, future, re-named or re-packaged TVP channels, including *TVP Polonia* and *TVP Info* (even if SEI's license to *TVP Info* expired on April 29, 2012 and was not renewed).

38.     Moreover, and as is specifically relevant to SEI's claim in this action, by sections II.A and II.E of the Settlement Agreement the parties intended to establish a bright line prohibition – that TVP could not (directly or indirectly) distribute any channels containing any *TVP Polonia* past, present or future programming in the Territory via any means, thus avoiding any and all possibility that TVP would distribute other Polish-language channels (whether *TVP Info*, or any other so-called "thematic channel," or a reformatted or re-packaged version of *TVP Polonia* itself, such as TVP's contemplated channel *TVP for Polonia*) containing any *TVP Polonia* programming content in competition with SEI. This intent is confirmed not only by section II.E (absolutely precluding other channels containing *TVP Polonia* programming), but also sections II.A (providing that "SEI is and shall remain the exclusive distributor of *TV Polonia* ... programming content in the territory of North and South America by any and all means of distribution") and II.K (providing that TVP will "maintain and continue all Internet geo-blocking" then in effect, which mandated that TVP could not make *TVP Polonia* programming available to Internet users in the Territory).

39. I have read TVP's papers and arguments submitted in support of its motion for summary judgment. Although TVP admits that *TVP Info* in fact contains *TVP Polonia* programming (indeed, it has always included *TVP Polonia* programming, and TVP further admits that it will continue to contain such programming into the future), TVP argues that a special exception to SEI's exclusivity purportedly applies in regard to *TVP Info* because SEI's license of that channel expired on April 29, 2012, and the prohibition contained in section II.E of the Settlement Agreement purportedly applies only to channels other than "*TVP Polonia* **and** *TVP Info*." See TVP's moving brief at 1 ("Clause II.E is unambiguous. It prevents TVP from distributing "*other channels*" – meaning *television channels other than 'TVP Polonia'* **and** *'TVP Info'*"); at 10 ("Clause II.E is clear on its face. It restricts TVP from distributing 'other channels' that contain the same programming as *TVP Polonia* **and** *TVP Info*.") (emphasis added). TVP is wrong, and it clearly must ignore section II.A and re-write section II.E of the Settlement Agreement to advance its argument that its proposed distribution in the Territory of the *TVP Info* channel is somehow an exception to SEI's exclusivity.

40. Section II.E of the Settlement Agreement does not refer to channels other than "*TVP Polonia* **and** *TVP Info*" as TVP claims. Rather, that provision clearly prohibits TVP from distributing any channel other than those exclusively distributed by SEI – including the *TVP Info* channel, which indisputably contains *TVP Polonia* programming. That prohibition is mandated, confirmed and consistent with Clause II.A of the Settlement Agreement which provides that: "SEI is **and shall remain** the exclusive distributor of *TV Polonia* and *TVP Info* programming content in the territory of North and South America by any and all means of distribution [subject to minor exceptions not relevant here]." See **Exhibit 27** (Settlement Agreement) at II.A (emphasis added). Indeed, as confirmed by the accompanying declaration of TVP's Piotr

Lenarczyk, the parties intended (by sections II.A and II.E of the Settlement Agreement) to preclude TVP from distributing in the Territory any channel containing any *TVP Polonia* programming content for the full duration of SEI's exclusive license – including *TVP Info* in the event that SEI's license to that channel was not renewed. See id. (Settlement Agreement) at II.E (prohibiting TVP's distribution of channels other than "**either** *TVP Polonia* **or** *TVP Info*") (emphasis added). TVP is attempting once again to willfully misinterpret its Agreement with SEI in order to limit SEI's exclusive rights.

41. TVP otherwise attempts to rely upon my deposition in an unrelated action wherein I was asked a question concerning section II.E of the Settlement Agreement (specifically, why that section refers to the distribution of channels). See TVP's moving brief at 2. My deposition testimony in that unrelated case is entirely consistent with my testimony here that SEI has the exclusive right to distribute *TVP Polonia* programming in the Territory (Settlement Agreement at II.A) and that TVP is precluded from distributing any other channel in the Territory containing *TVP Polonia* programming, including *TVP Info*. See Wenger Decl. Exhibit 1 (Dep. Tr.) at 86:17-24 (testifying as to my understanding of section II.E: "I understand what the clause says, namely, that any channels which contain the programming to which we [SEI] are exclusive licensee ... cannot be distributed in the territory); id. at 88:8-16 (testifying as to the purpose of section II.E: to prohibit TVP from "distribut[ing] any other channels which would contain the programming content to which we [SEI] are exclusive licensee in the territory.").

42. When specifically asked at deposition as to why clause II.E refers to the distribution of channels, I explained (TVP does not quote this testimony) that channels contain programming content, and that that provision thus precluded TVP from, by way of example, re-

packaging *TVP Polonia* programming content and creating a "new" channel including such programming. Because I found TVP's efforts to circumvent SEI's exclusive rights by creating a re-packaged and re-named channel *TVP for Polonia* to be particularly reprehensible, my deposition answer focused on that prior conduct. But I was not specifically asked at deposition whether clause II.E precluded TVP from distributing any specific channel, such as the thematic channels, let alone the *TVP Info* channel (the deposition being taken on November 8, 2011, SEI still held the exclusive right to distribute *TVP Info* in the Territory and no decision had been made as to whether that license would or would not be renewed).

43.  Finally, TVP argues (wrongly) that its proposed distribution of *TVP Info* in the Territory would not compete with SEI's distribution of *TVP Polonia* because (TVP claims) there is a minimum of programming overlap between the two channels, and because *TVP Info* is a news channel whereas *TVP Polonia* contains "general cultural programming." TVP is wrong. TVP admits (as it must) that *TVP Info* has and will continue to contain *TVP Polonia* programming.  <u>See generally</u> Declaration of Danuta Celinska-Bejgier.  The Settlement Agreement, however, precludes TVP from distributing <u>any</u> channel containing <u>any</u> *TVP Polonia* programming in the Territory.  Accordingly, this Court should decline TVP's invitation to sanction <u>any</u> overlap of programming (contrary to the parties' Settlement Agreement which precludes overlap of any amount).  To do otherwise require this Court to wholly ignore one provision of the Settlement Agreement (concerning SEI's exclusivity) and to re-write another, and would place this Court in the position of having to continuously monitor TVP's programming choices (it is TVP's sole decision as to the programming content broadcast on both *TVP Polonia* and *TVP Info*) and potentially repeatedly re-visit the issue of "how much overlap is too much." Such a result is clearly in conflict with the parties' Settlement Agreement.

Pursuant to 28 U.S.C. § 1746, I declare under the penalties of perjury that the foregoing is true and correct.

Executed on this 30 day of November 2012.

*BOGUSŁAW M. SPAŃSKI*